IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Edward H. GANT, et al., | :<br>:<br>: |
| Plaintiff(s), | : Civil No. 16-1954 (RBK/JS)<br>: |
| v. | : **Opinion**<br>: |
| ADVANCED ELECTRICAL, INC., | :<br>: |
| Defendant. | :<br>: |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiffs Edward H. Gant and I.B.E.W. Local 351 Pension Fund's Complaint against Defendant Advanced Electrical, Inc. asserting claims for withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA") (Doc. No. 1). Currently before the Court is Defendant's Motion to Vacate Default Judgment (Doc. No. 9) and Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 13). For the reasons expressed below, Defendant's Motion is **DENIED** and Plaintiffs' Motion is **DISMISSED**.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

I.B.E.W. Local 351 Pension Fund ("Fund") is a multiemployer pension plan in which Defendant was a participating employer. *See* Compl. ¶¶ 8–9. According to the Inside Agreement, I.B.E.W. Local 351 may terminate the Agreement in the case that Defendant fails to contribute to the Fund as required. Pls.' Opp'n to Mot. to Vacate Default, Bushinsky Cert. Ex. B. According to Plaintiffs, Defendant stopping remitting payments at some point, and I.B.E.W. Local 351 notified Defendant of the Agreement's termination on March 8, 2010. Pls.' Opp'n to Mot. to

Vacate Default 2. Plaintiffs claimed that Defendant's actions constituted a complete withdrawal and demanded a withdrawal liability payment of $20,881.00 on December 2, 2014. Compl. ¶¶ 1, 11. Defendant responded by disputing it was liable, but did not request to arbitrate the matter. Def.'s Reply to Mot. to Vacate 3. Defendant concedes that at no point in the ninety days following Plaintiffs' demand did it demand arbitration. *Id.* On February 4, 2016, Plaintiffs once again requested Defendant pay withdrawal liability. Compl. ¶¶ 1, 11. Defendant did not remit payment but stated that it had not requested arbitration because it assumed its previous letter was under review. Pls.' Opp'n to Mot. to Vacate Default, Bushinsky Cert. Ex. F.

Plaintiffs brought a Complaint for withdrawal liability on April 7, 2016 (Doc. No. 1). Plaintiffs retained a private process server to serve the Summons and Complaint on Defendant at 207 W. Clinton Avenue, Oaklyn, New Jersey (Doc. No. 4). The Return of Service states that process was left with Debbie R, a person authorized to accept service. By June 14, 2016, Defendant had not answered or otherwise moved in response to the Complaint, and Plaintiff obtained a Clerk's Entry of Default (Doc. No. 5). The Court then granted Plaintiffs' Motion for Default Judgment on October 11, 2016 (Doc. No. 7). On December 6, 2016, Defendant filed the present Motion to Vacate Default Judgment (Doc. No. 9), and on January 4, 2017, Plaintiffs responded to the Motion to Vacate in conjunction with filing a Cross-Motion for Summary Judgment (Doc. No. 13).

## II. MOTION TO VACATE DEFAULT JUDGMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b)(2), courts may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action. *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a

defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). While the entry of a default judgment is largely a matter of judicial discretion, the Third Circuit Court of Appeals has "repeatedly stated its preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984).

Under Rule 55(a), there is a two-step procedure required for entry of default judgment: first, the Clerk must enter default, and then either the Clerk or the Court may enter default judgment under Rule 55(b). When an entry of default has been made and prior to default judgment being entered, Rule 55(c) provides that "the court may set aside an entry of default for good cause." The decision to set aside the entry of default in accordance with Rule 55(c) or a default judgment in accordance with Rule 60(b) is left "primarily to the discretion of the district court." *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002) (citations omitted).

The standard used to set aside an entry of default under Rule 55(c) is also used when determining whether to enter default judgment under Rule 55(b). *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). When seeking to set aside an entry of default or an entry of default judgment, the court must consider three factors: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Id*. The court must also consider, along with these factors, that default judgments are generally disfavored in the Third Circuit, as they prevent claims from being determined on the merits. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008).

**B. Discussion**

For the reasons set forth below, the Court concludes that Defendant's failure to answer did not prejudice Plaintiffs or result from culpable conduct. However, because Defendant presents no meritorious defenses, the Court nonetheless denies the Motion to Vacate Default Judgment.

*1. Prejudice to Plaintiff*

"Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656–57 (3d Cir. 1982). Factors that contribute to a showing of prejudice to a plaintiff include loss of available evidence, increased potential for fraud of collusion, or substantial reliance upon the judgment. *Id.* Plaintiffs here argue that it will be prejudiced by the additional delays in resolving the case. Defendant, however, filed the Motion to Vacate two months after the Court entered default judgment, and the Court does not find that delay in time to be egregious enough to constitute prejudice. As such, this factor does not weigh against setting aside the default judgment.

*2. Meritorious or Litigable Defense*

"The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). "Simple denials or conclusory statements" by the defaulting party are insufficient to show a meritorious defense. *Id*. "While the defaulting party need not prove that it will win at trial, it must raise a defense that is meritorious

on its face." *Pooler v. Mrs. Kurbitis Realty, LLC*, No. Civ. 14-429 (WHW) (CLW), 2015 WL 5897455, at *2 (D.N.J. Oct. 7, 2015).

### a. Service of Process

Defendant claims it was not properly served. It first asserts that ERISA requires service "upon the corporation by certified mail." 29 U.S.C. § 1451(g). However, the term "corporation" as used in that provision refers to the Pension Benefit Guaranty Corporation established under ERISA, and not a defendant who is incorporated. 29 U.S.C. § 1301. Section 1451(g) thus does not govern service in this case.

Under Federal Rule of Civil Procedure 4(h), a corporation, partnership, or association can be served by (1) following state law of the state where the district court is located or where service is made; or (2) by delivering the summons and the complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law." New Jersey law allows service of process on "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof." N.J. Ct. R. 4:4-4. If service cannot be made on any of these persons, it may be made "on a person at the principal place of business of the corporation in this State in charge thereof." *Id.*

In the Third Circuit, a signed return of service by a private process server creates a rebuttable presumption of proper service. *See Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 514 n.5 (3d Cir. 1971); *Hillside Golf, Inc. v. Gino Inn, Inc.*, 2010 WL 4056552, at *5 (N.J. Super. Ct. App. Div. July 22, 2010). To refute the return of service, a party must produce clear and convincing evidence. *Hillside Golf*, 2010 WL 4056552, at *5. Courts have generally found that affidavits by interested parties are not sufficient to overcome a prima facie showing of valid

5

service. *See, e.g.*, *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, No. Civ. 07-2726 (JLL), 2013 WL 1903295, at *4 (D.N.J. Apr. 17, 2013), *report and recommendation adopted*, No. Civ. 07-2726 (JLL), 2013 WL 1903293 (D.N.J. May 7, 2013) (finding the defendant showed it had moved addresses by presenting documents that included a driver's license, warranty deed transfer, mortgage statement, utilities bills); *Howard Johnson Int'l, Inc. v. SSR, Inc.*, No. Civ. 14-4611 (KM), 2015 WL 4461347, at *3 (D.N.J. July 21, 2015) (finding the defendant refuted the return of service with affidavits by the defendant's parents explaining the property was being rented to other tenants).

The parties dispute whether Plaintiffs served an authorized agent of Defendant's. Defendant contends that Debbie R, the person who received service, is an employee of a coffee shop adjoining Defendant's address. As proof, it presents a certification by Dennis Bataloni, Defendant's Chief Financial Officer. The Court finds this evidence insufficient to rebut the Return of Service. Plaintiff demonstrates service using a Return of Service completed by a private process server, which creates a presumption of proper service. Defendant attempts to rebut this prima facie showing with a certification by the company's CFO, but he is hardly a disinterested party. Furthermore, Defendant contends that the process server served the coffee shop next door, but the address on the Return of Service is that of Defendant's. Accordingly, Defendant fails to successfully refute Plaintiff's showing of service and the Court finds that Federal Rule of Civil Procedure 4(h) is satisfied.

### b. Statute of Limitations

Congress enacted the Multiemployer Pension Plan Amendments Act ("MPPAA") "out of concern that multiemployer pension plans could collapse as employers withdrew if the remaining contributors became too few in number to pay the unfunded vested benefits." *Galgay v.*

*Beaverbrook Coal Co.*, 105 F.3d 137, 139 (3d Cir. 1997). Thus, under the MPPAA, an employer who withdraws, completely or partially, from a multiemployer plan is liable to the plan in an amount determined pursuant to statute. 29 U.S.C. § 1391(a). This liability is known as "withdrawal liability." *See SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pa. and W. Md. Area Teamsters & Emp'rs Pension Fund*, 500 F.3d 334, 336 (3d Cir. 2007).

Under the MPPAA, a plan sponsor is required to notify a withdrawing employer of the amount of liability and the schedule for repayment, and to demand payment. 29 U.S.C. § 1399(b). The statute requires payment upon notification of withdrawal liability, whether or not the employer chooses to dispute it. *Galgay*, 105 F.3d at 139. "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Either party may institute arbitration proceedings. *Id.* But if the employer fails to make the withdrawal liability payment within the statutorily prescribed time period, the withdrawal liability assessment becomes "due and owing," and an action to compel payment may commence pursuant to 29 U.S.C. § 1451(b). *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.— Pension Fund v. Gotham Fuel Corp.*, 860 F. Supp. 1044, 1047 (D.N.J. 1993); *Galgay*, 105 F.3d at 139. Such a suit must be brought within six years after the cause of action arises. 29 U.S.C. § 1451(f). A cause of action, "carrying its own limitations period, arises from the date each [withdrawal liability] payment is missed." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 208 (1997) (internal quotation marks and citations omitted). "[T]he withdrawing employer owes nothing until its plan demands payment." *Id.* at 202 (citations omitted).

Defendant argues this action is untimely because Plaintiffs filed suit more than six years after Defendant allegedly withdrew from the Fund. However, the statutory period for a case brought under § 1451(f) commences not on the date of withdrawal but dates of missed payments. Here, Plaintiffs did not communicate the demand for withdrawal liability or send a payment schedule until December 2, 2014. It thus was only thereafter that Defendant could have missed a payment to trigger § 1451(f) liability. The April 7, 2016 Complaint thus falls well within the six-year statutory period, and the statute of limitations defense is not one of merit.

### c. Estoppel, Laches, Fraud, Misrepresentation, Concealment

Defendant additionally raises several defenses arising out of common law. The Court finds none of them persuasive. First, Defendant argues that Plaintiffs are estopped from pursuing the case because it is unclear if Plaintiffs terminated the Inside Agreement such that a complete withdrawal occurred. What constitutes complete withdrawal, however, is defined by 29 U.S.C. § 1383, and that provision is subject to arbitration under the MPPAA. 29 U.S.C. § 1401(a)(1). The same applies to Defendant's defense of laches. Defendant contends that Plaintiffs failed to provide notice of withdrawal liability "[a]s soon as practicable," as required by 29 U.S.C. § 1399. Disputes over section 1399, however, also must first be arbitrated pursuant to the arbitration mandate. Because Defendant failed to demand arbitration within ninety days, Defendant waived these defenses.

Defendant lastly makes reference to fraud, misrepresentation, and concealment, which it correctly notes fall outside the technical issues reserved for MPPAA arbitration. *See Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Employers Pension Fund*, 847 F.2d 113, 115 (3d Cir. 1988). In asserting these defenses, however, Defendant does not explain why they apply to this case. Conclusory statements do not defenses make, and the Court does not find the allusions

to fraud, misrepresentation, and concealment to be of substance. Therefore, it does not appear that Defendant has any meritorious or litigable defenses, and this factor weighs against vacating the default judgment.

        3.     *Culpable Conduct*

Lastly, the court must examine the conduct of the party moving to vacate default, and this factor focuses on whether or not the defendant's delay in responding constitutes culpable conduct. In other words, the court must determine whether the defendant acted "willfully or in bad faith." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). "'Culpable conduct' surpasses mere negligence, and consists of willful, intentional, reckless or bad faith behavior." *S.G. Enterprise, LLC v. Seaboard Paper & Twine*, Civ. No. 14-cv-3471 (WHW)(CLW), 2015 WL 3630965, at *3 (D.N.J. June 10, 2015). "Reckless disregard for repeated communications from the plaintiffs and the court . . . can satisfy the culpable conduct standard." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (citations omitted). In this case, Plaintiffs argue that Defendant exhibited culpable conduct in failing to respond to its Request for Default and Motion for Default Judgment. These omissions, however, do not show willful, intentional, reckless, or bad faith behavior. Accordingly, the Court does not find culpable conduct in Defendant's failure to timely answer the pleadings.

## III.   ATTORNEY'S FEES

This Court previously awarded Plaintiffs attorney's fees and costs in connection with their claim for withdrawal liability, in an order entered prior to Defendant's Motion to Vacate. Plaintiffs now seek additional attorney's fees and costs for expenses incurred following the Motion to Vacate. The Third Circuit requires that district courts award attorney's fees in

successful actions brought under 29 U.S.C. § 1451. *Penn Elastic Co. v. United Retail & Wholesale Emps. Union, Local 115 Joint Pension Fund*, 792 F.2d 45, 47 (3d Cir. 1986). Accordingly, the Court awards Plaintiffs attorney's fees and costs incurred in litigating the Motion to Vacate and Motion for Summary Judgment, and orders that Plaintiffs submit affidavits detailing such expenses. However, because replies in support of cross-motions are not permitted without leave of the court under Local Civil Rule 7.1(h), the award will not extend to expenses associated with Plaintiffs' Reply to the Motion for Summary Judgment.

**IV.     MOTION FOR SUMMARY JUDGMENT**

The default judgment in favor of Plaintiffs stands, so the Court dismisses the Motion for Summary Judgment as moot.

**V.     CONCLUSION**

For the reasons expressed above, Defendant's Motion to Vacate is **DENIED**. Plaintiffs' Motion for Summary Judgment is **DISMISSED**.

Dated:   8/23/2017                                                                s/ Robert B. Kugler
                                                                                               ROBERT B. KUGLER
                                                                                               United State District Judge